NUMBER 13-07-00297-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


ROSITA DE LA PAZ, Appellant,


v.
 


ADAN DE LA PAZ, Appellee.

 




On appeal from the 28th District Court of Nueces County, Texas.


 




MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Justice Garza


 

 This case involves an acrimonious divorce between appellant, Rosita De La Paz,
and appellee, Adan De La Paz. Rosita appeals the final divorce decree entered by the trial
court on February 22, 2007. By three issues, which can be categorized properly as two,
Rosita contends that: (1) the trial court abused its discretion in making an unreasonable
and arbitrary division of the marital estate; and (2) she was denied her due process right
to be heard when the trial court denied her request for more time to seek counsel. We
affirm.

I. Background

 On December 1, 2004, Rosita filed an original petition for divorce on the grounds
that the marriage had become insupportable because of discord or conflict of personalities. 
In her petition, Rosita requested a temporary restraining order against Adan, temporary
orders concerning the use of the marital property, temporary exclusive use of the marital
residence, and temporary support, among other things. In addition, Rosita attached an
affidavit stating: I believe that my husband, Adan De La Paz[,] has transferred property
belonging to our marital estate without my knowledge or consent and without
making any accounting for the proceeds from doing so. Based on his history
of having done so and his statements to me concerning our property, I
believe he intends to continue to do so.


Adan was personally served with a copy of the petition on December 1, 2004. On
December 15, 2004, Adan filed his original counter-petition for divorce, original answer to
Rosita's petition, and a motion for temporary orders, which mirrored Rosita's request for
temporary orders. 

 On May 18, 2006, the trial court conducted the final hearing in this case. (1) A final
decree of divorce was signed by the trial court on June 2, 2006. The final decree awarded
specific property to each spouse as their sole and separate property. Notably, each were
awarded (1) a one-half undivided interest in 1533 16th Street in Corpus Christi, Texas, and
(2) a one-half undivided interest in 1537 16th Street in Corpus Christi. In addition, Rosita
was awarded a full interest in 1541 16th Street in Corpus Christi as her sole and separate
property. 

 Adan filed a motion for new trial on July 3, 2006. In his motion, Adan explained that
he did not participate in the May 18, 2006 final hearing because he was not provided with
notice of the trial setting. Adan demonstrated that notice was sent to 1541 16th Street in
Corpus Christi, where he and Rosita resided during the course of the divorce proceedings. 
Adan suggested that Rosita intercepted the notice and informed him that the case had
already been dropped. Furthermore, Adan argued that the trial court awarded Rosita
property that was his separate property. In support of his motion for new trial, Adan
executed an affidavit where he stated the following:


 I was not aware of the trial setting in this case on May 18, 2006. If a
notice was mailed to me at 1541 16th Street, Corpus Christi, Texas 78404,
I did not receive it, nor did I have any other notice of that setting. I was not
the only person residing in that house at the time. Among others, my wife,
Rosita De La Paz, the Petitioner in this case, was living there. I would not
have been expecting a notice, since my wife had led me to believe that this
case, which was filed in 2004, had been dropped. I also never received a
notice that a judgment had been entered in this case. I only learned of it on
June 29, 2006, when I went to pay taxes on the house where I was living and
found out that it was no longer in my name. I had lived with my wife and
children in that house continuously throughout the divorce proceedings and
since the decree was signed.

 

 . . . .

 

 The real property at 1541 16th Street, Corpus Christi, Texas, that was
awarded to my wife was actually my separate property. I owned it before we
were married. The real properties at 1533 16th Street and 1537 16th Street,
which were awarded half to me and half to my wife, are owned by my
mother. I had owned them briefly, but they were transferred to my nephew,
Robert De La Paz Alvarez, well before the divorce took place, and he later
transferred them to my mother. I had gotten them from my sister, Terry, as
my separate property[.] No community funds were used to purchase it from
her. The property was exchanged among my family members depending on
who could keep up the taxes at any given time. The transfer to my nephew
was not done with any intent to defraud the community and was never part
of the community property. Except for a little money applied to property
taxes, no funds of ours were expended on the property. We put more money
into the bakery that my wife claims as her separate property than we did in
the real property at 1533 and 1537 16th Street.

 

 . . . .

 

 The division of the actual community estate is disproportionately in favor of
my wife.

 The trial court subsequently denied Adan's motion for new trial on August 2, 2006. 
On August 11, 2006, Adan filed a motion for leave of court and an amended motion for
new trial, advancing many of the same arguments as contained in the original motion for
new trial but with additional analysis and documentary evidence. Notably, in his amended
motion for new trial, Adan stated that the marriage between he and Rosita occurred in
1995. The trial court signed an order granting Adan's motion for leave and amended
motion for new trial on August 22, 2006. The order acknowledged that the parties had
agreed to the motion and that the trial court's June 2, 2006 final decree was invalid
because Adan neither received notice of nor participated in the earlier trial setting. Thus,
the June 2, 2006 final decree was vacated.

 The trial court set the case for a final hearing on December 15, 2006. Rosita then
filed a first amended original petition for divorce on November 21, 2006. In this filing,
Rosita alleged that she and Adan were married by common law on January 24, 1989, and
thereafter entered into a ceremonial marriage on September 10, 1994. (2) At the scheduled
December 15, 2006 hearing, the trial court granted Rosita's request for more time to retain
counsel.

 The final hearing was then rescheduled for February 2, 2007. Prior to opening
arguments, Rosita requested additional time from the trial court to retain counsel, but her
request was denied. After hearing arguments, the trial court took the matter under
advisement. In the meantime, Adan submitted a proposed final divorce decree. On
February 19, 2007, Rosita filed objections to Adan's proposed final decree of divorce. In
her objections, Rosita alleged that Adan's proposed distribution of the marital estate was
unfair because: (1) the proposed decree ordered the sale of 1541 16th Street, where she
had lived for over fifteen years; and (2) it divested her of her previously granted community
interest in 1533 and 1537 16th Street while Adan received "all of the interest in the other
two houses acquired during their marriage, 1533 and 1537 16th Street." Rosita further
alleged that once the home at 1541 16th Street was sold and all encumbrances were
removed and fees were paid, she would only be entitled to about $5,000.

 Over Rosita's objections, the trial court signed a final decree of divorce on February
22, 2007, which substantially matched Adan's proposed decree. The divorce decree
itemized the sole and separate property of each spouse and ordered the sale of 1541 16th
Street with the proceeds to be split by the parties once all outstanding encumbrances were
removed and all fees associated with the property were paid. However, the decree did not
reference the properties at 1533 and 1537 16th Street.

 On March 9, 2007, Rosita filed a motion for new trial, asserting that the trial court
denied her due process by requiring her to proceed at the February 2, 2007 final hearing
without allowing her adequate time to retain counsel, and that, as a result of the trial court's
denial of her due process rights, she lost all of her community interest in two of the houses
on 16th Street. The trial court did not rule on Rosita's motion for new trial; therefore, it was
overruled by operation of law. See Tex. R. Civ. P. 329b(c). This appeal ensued. 


II. Due Process and Rosita's Motion for Continuance


 By her second issue, Rosita argues that by denying her additional time to retain
counsel at the February 2, 2007 final hearing, the trial court prevented her from being
heard meaningfully. Rosita further argues that her lack of proficiency in the English
language and her lack of knowledge of the law caused her to be "unheard or
misinterpreted," thus constituting a denial of her due process rights. Adan, proceeding pro
se on appeal, argues that the record clearly establishes that Rosita understood what she
was doing at the February 2, 2007 final hearing; therefore, she was not denied due process
of law. 

A. Standard of Review


 We review a denial of a continuance under an abuse of discretion standard. See
Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986). The trial court's action in denying 
a continuance will not be disturbed on appeal unless the record discloses a clear abuse
of discretion. Id. A trial court abuses its discretion if it acts in an arbitrary and
unreasonable manner or when it acts without reference to any guiding rules or principles. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

 A motion for continuance may not be granted "except for sufficient cause supported
by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251;
O'Connor v. O'Connor, 245 S.W.3d 511, 516 (Tex. App.-Houston [1st Dist.] 2007, no pet.). 
Absence of counsel, standing alone, is not good cause for a continuance. Tex. R. Civ. P.
253; O'Connor, 245 S.W.3d at 516. When withdrawal of counsel is the ground for
continuance, the movant must show that failure to be represented by counsel at trial was
not due to his or her own fault or negligence. Villegas, 711 S.W.2d at 626. 

 The Villegas court stated that: "The right to counsel is a valuable right; its
unwarranted denial is reversible error. Therefore, when a trial court allows an attorney to
voluntarily withdraw, it must give the party time to secure new counsel and time for the new
counsel to investigate the case and prepare for trial." Villegas, 711 S.W.2d at 626
(citations omitted). Moreover, in reviewing the trial court's denial of a motion for
continuance, the Austin Court of Appeals has noted that there is no mechanical test for
determining when the denial is so arbitrary as to violate due process. Guerrero-Ramirez
v. Tex. State Bd. of Med. Examiners, 867 S.W.2d 911, 916 (Tex. App.-Austin 1993, no
writ) (citing Ungar v. Sarafite, 376 U.S. 575, 591 (1964)). Instead, the reviewing court must
consider the circumstances presented to the trial judge at the time the request was made. 
Id. (citing Ungar, 376 U.S. at 591).

B. Discussion


 At the February 2, 2007 final hearing, the following exchange took place with
respect to Rosita's failure to retain counsel:

 THE COURT: All right. Are you ready?

 

 MRS. DE LA PAZ: Yeah.

 

 THE COURT: Okay.

 

 MRS. DE LA PAZ: But I don't have a lawyer because I tried to get a lawyer. 
They said it was too quick and it would be some days. 
And I said that if they give me 30 days so I can get a
lawyer, because they couldn't--

 

 THE COURT: When did you start looking for an attorney?

 

 MRS. DE LA PAZ: As soon as they told me when I got out of there.

 

 . . . .

 

 THE COURT: That was back in December?

 

 MRS. DE LA PAZ: Yes, ma'am.

 

 THE COURT: So you had more than 30 days, because December
15th--

 

 MRS. DE LA PAZ: And they were telling me they were in a--they have a
case. So--

 

 . . . .

 

 MRS. DE LA PAZ: Yeah. But he said that he's busy, the attorney. And
then I called somebody else close to where I work, and
he said he had a case. And I called somebody else,
and they had a case. So they said I have to wait. So I
just came to tell you, you know, give me at least--you
know, I will try this next time if you give me one more
chance.

 

 THE COURT: This has been since August that we've been trying to
get this case heard.

 

 MRS. DE LA PAZ: But I don't know why they want to--

 

 THE COURT: August, September. We've got October, all of
November, all of December, all of January. We're in
February.

 

 MRS. DE LA PAZ: But I don't know why they want to open it. The way you
sealed the things that you gave me, my husband didn't
like it. So he came and--

 

 THE COURT: Well, that's why we set it for final hearing, to make it all
correct. I don't know if I'm going to order the same
things, but we need to have this case heard. We're
going to go forward. Let me take care of the rest of my
docket. Take a seat, M[r]s. De La Paz.

 

 . . . .

 

 THE COURT: What I'm thinking is that even if I proceed and go to
final hearing and make a ruling, you know, that's not
going to stop M[r]s. De La Paz from getting an attorney
at that point and filing her motion for new trial saying
that she was not represented and all these other things. 
So I don't know what to do.

 

 The problem is, M[r]s. De La Paz, on the other
hand, you've had every opportunity to get your attorney
since September. No, really August, you know. And I
have every right to proceed without you having an
attorney today.


 MRS. DE LA PAZ: Can you give me one more chance? And I promise you
I'll have an attorney.

 

 THE COURT: Let me see. Okay. Since August 29th there was a
motion for continuance. September 29th it was called
for trial and M[r]s. De La Paz requested--I guess your
attorney requested to withdraw. So we reset this matter
for another day. At that point in time you knew that this
case was going to be set and tried. So we have
October, November, December. We came back in
December. You were told to come back. All of January
and now we are in February. That's what, five, six
months?

 

 MRS. DE LA PAZ: Yes, ma'am.


 Throughout the course of this case, Rosita has been represented by four different
attorneys at different times. At least two of the attorneys withdrew at Rosita's request. 
Rosita did not specifically express to the trial court that she was diligent in procuring
representation prior to the February 2, 2007 final hearing. She merely stated that she
made a couple of phone calls to local attorneys. She did not specify when she began to
search for legal representation, nor did she testify as to exactly whom she contacted. It is
clear from the record before us and the testimony adduced at the February 2, 2007 final
hearing that Rosita was not represented at the hearing due to her decisions to hire and fire
several different attorneys. See Villegas, 711 S.W.2d at 626. 

 The record further reflects that the trial court and Adan's trial counsel questioned
Rosita about the accumulation of property in the marital estate, and that she provided
cogent, albeit argumentative, answers to the questions. Furthermore, Rosita participated
in the cross-examination of Adan and never did request an interpreter. It is clear from our
review of the record that Rosita understood the nature of the proceedings and that her
proficiency with the English language was sufficient to represent herself at the hearing. 
Therefore, based on the foregoing, we cannot conclude that the trial court abused its
discretion in denying Rosita's oral motion for continuance. See id. Accordingly, we
overrule her second issue. 


III. The Trial Court's Division of the Marital Estate


 In her first issue, Rosita asserts that the trial court abused its discretion in dividing
the community property of the marital estate. Specifically, Rosita argues that: (1) the trial
court's division of the marital estate was based on evidence that was not credible; and (2)
she was "taken advantage of" at the February 2, 2007 final hearing because she was not
represented by counsel. In particular, Rosita complains about the trial court's division of
the properties at 1533, 1537, and 1541 16th Street as described in the final divorce decree. 
Adan counters by arguing that: (1) the properties have been in his family for over forty
years; (2) the properties were transferred to his son more than two years before Rosita
filed her original petition for divorce; and (3) no community funds were used to purchase
or maintain the properties. 

A. Standard of Review


 The Texas Family Code requires the trial court to "order a division of the estate of
the parties in a manner that the court deems just and right, having due regard of the rights
of each party . . . ." Tex. Fam. Code Ann. § 7.001 (Vernon 2006). We review the trial
court's division of property in a divorce decree under an abuse of discretion standard. 
Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). "Mathematical precision in dividing
property on divorce is usually not possible." Id. at 700. Wide latitude and discretion rests
with the trial court, and it "is empowered to use its legal knowledge and its human
understanding and experience." Id. We will reverse on appeal only if the property division
is so disproportionate as to be manifestly unjust and unfair. Smith v. Smith, 22 S.W.3d
140, 143 (Tex. App.-Houston [14th Dist.] 2000, no pet.).

B. Applicable Law

 The Texas Family Code provides that property possessed by either spouse during
or on the dissolution of marriage is presumed to be community property unless the spouse
can prove by clear and convincing evidence that the property is his or her separate
property. Tex. Fam. Code Ann. § 3.003 (Vernon 2006); see Boyd v. Boyd, 131 S.W.3d
605, 612 (Tex. App.-Fort Worth 2004, no pet.). "Clear and convincing" evidence means
the measure or degree of proof that will produce in the mind of the trier of fact a firm belief
or conviction as to the truth of the allegations sought to be established. In re C.H., 89
S.W.3d 17, 25 (Tex. 2002); Mock v. Mock, 216 S.W.3d 370, 372 (Tex. App.-Eastland
2006, no pet.). A party seeking to rebut the community presumption must trace the assets
on hand during the marriage back to property that is separate in character. Cockerham v.
Cockerham, 527 S.W.2d 162, 167 (Tex. 1975); Boyd, 131 S.W.3d at 612. Tracing involves
establishing the separate origin of the property through evidence showing the time and
means by which the spouse originally obtained possession of the property. Boyd, 131
S.W.3d at 612. The burden of tracing is a difficult, but not impossible, burden to sustain. 
Latham v. Allison, 560 S.W.2d 481, 484 (Tex. Civ. App.-Fort Worth 1977, writ ref'd n.r.e.). 
We are to resolve any doubt as to the character of the property in favor of the community
estate. Akin v. Akin, 649 S.W.2d 700, 703 (Tex. App.-Fort Worth 1983, writ ref'd n.r.e);
Contreras v. Contreras, 590 S.W.2d 218, 221 (Tex. App.-Tyler 1979, no writ). C. Characterization of the Properties 

 In his amended motion for new trial, Adan provided, among other things, copies of
deeds corresponding to two of the three properties in question--1533 and 1537 16th
Street--and a tax return jointly filed by the couple in 1990. On the tax return, Rosita and
Adan designated that they were married and were filing a joint tax return. (3) 

 1. 1533 and 1537 16th Street

 With respect to the property at 1533 16th Street, Adan referenced a copy of a
special warranty deed reflecting that Teresita De La Paz, his sister, conveyed the property
to Adan on February 25, 1994. The deed further stated that the property was Adan's
"separate property and estate . . . ." Adan paid $10.00 as consideration for the
conveyance, but the deed does not reflect that Adan paid additional monies to acquire the
property. At the February 7, 2007 final hearing, Adan testified that his mother lived at 1533
16th Street, and that he acquired the property before he married Rosita. 

 The deed corresponding to the property on 1537 16th Street indicated that Adan
acquired the property from Ray Clark Hankins on October 22, 1996, for $10.00
consideration. Rosita testified at the February 7, 2007 final hearing that Adan's sister,
Delia Ybarra, lived at 1537 16th Street. The record reflects that on May 10, 2002, Adan
conveyed both 1533 and 1537 16th Street to his son, Robert De La Paz Alvarez, Jr. In this
deed, Adan identified himself as "a single man" and as the owner of both properties. Later,
on May 28, 2003, Robert conveyed the properties to Juanita De La Paz, Adan's mother. 
 2. 1541 16th Street 

 In his proposed division of property filed with the trial court, Adan included a copy
of an "ASSUMPTION WARRANTY DEED WITH VENDOR'S LIEN" corresponding to the
property at 1541 16th Street. This deed reflected that Adan, as "a single man," acquired
the property at 1541 16th Street from Frank and Geneva Lucero Loera on June 10, 1993,
for $10.00 in consideration and an assumption of the remaining balance of $26,000 on the
note associated with the property. Adan admitted at the February 7, 2007 final hearing that
both he and Rosita paid on the note. Furthermore, Rosita testified that she paid $451 per
month to help Adan pay for the property.

 Throughout the course of the divorce proceedings, Adan has argued that the three
properties--1533, 1537, and 1541 16th Street--have been in his family since 1962. He
has stated that the reason the properties were conveyed to Robert in 2002 was because
Adan was unable to pay the taxes on the property. Adan further stated that the family
regularly conveyed property amongst themselves based on which family member could pay
the applicable property taxes. Despite Adan's statements, neither party has adequately
traced the funds used to purchase the three properties to establish the properties as their
separate property, nor have they established that the properties were acquired before
marriage or as a gift or bequest. (4) See Tex. Fam. Code Ann. § 3.001(1), (2) (Vernon 2006)
(providing that property is a spouse's separate property if it was owned or claimed by the
spouse before marriage or if the property was acquired during marriage by "gift, devise, or
descent"); see also Mock, 216 S.W.3d at 373 (holding that testimony that assets are
separate property without any tracing is insufficient to rebut the community presumption). 
In addition, the record does not contain evidence proving that Frank and Geneva Lucero
Loera and Ray Clark Hankins are members of the De La Paz family. Thus, Adan's
argument that all three properties have been in his family since 1962 is undermined. 
Because the record suggests that Adan and Rosita were married as early as 1990, and
because neither party traced the funds used to purchase the properties, we conclude that
the community presumption holds and that the properties in question are part of the
community estate. See Cockerham, 527 S.W.2d at 167; Boyd, 131 S.W.3d at 612.

D. Joint Tenancy and 1533 and 1537 16th Street

 As previously mentioned, the trial court, in its final divorce decree, did not reference
1533 and 1537 16th Street and it ordered the sale of 1541 16th Street with the proceeds
to be split amongst the parties after all fees are paid and encumbrances removed. (5) 

 Texas courts have held that when a court fails to divide property at the time of the
divorce, the ex-spouses become tenants in common or joint owners of the property. (6) In
re Marriage of Notash, 118 S.W.3d 868, 872 (Tex. App.-Texarkana 2003, no pet.) (citing
Busby v. Busby, 457 S.W.2d 551, 554 (Tex. 1970), questioned on other grounds by Jeffrey
v. Kendrick, 621 S.W.2d 207 (Tex. App.-Amarillo 1981, no writ); In re Taylor, 992 S.W.2d
616, 619 (Tex. App.-Texarkana 1999, no pet.); Soto v. Soto, 936 S.W.2d 338, 340 (Tex.
App.-El Paso 1996, no writ); Burgess v. Easley, 893 S.W.2d 87, 90 (Tex. App.-Dallas
1994, no writ)); see Bishop v. Bishop, 74 S.W.3d 877, 879 (Tex. App.-San Antonio 2002,
no pet.). We need only remand the entire community estate for a just and right division if
the trial court mischaracterized the property and the mischaracterization of the property
had more than a de minimus effect on the trial court's original division of the property. See
Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985); Boyd, 131 S.W.3d at 617; Zeptner
v. Zeptner, 111 S.W.3d 727, 740 (Tex. App.-Fort Worth 2003, no pet.); Robles v. Robles,
965 S.W.2d 605, 615 (Tex. App.-Houston [1st Dist.] 1998, pet. denied). Here, the trial
court did not reference either the 1533 or 1537 16th Street properties much less
characterize the properties as community property or separate property. In her motion for
new trial and on appeal, Rosita assumes that the trial court concluded that these properties
were Adan's separate property. However, because the trial court did not reference either
1533 or 1537 16th Street in the final divorce decree, and because we have already
concluded that these properties were part of the community estate, Rosita and Adan own
the properties as tenants in common as a matter of law. See In re Marriage of Notash, 118
S.W.3d at 872; see also Busby, 457 S.W.2d at 554; Bishop, 74 S.W.3d at 879; Soto, 936
S.W.2d at 340; Burgess, 893 S.W.2d at 90. On appeal, Rosita's arguments center on the
characterization of the properties in question, but she has not directed us to evidence
indicating that the trial court abused its discretion in dividing the marital property. See Tex.
R. App. P. 38.1(h). Accordingly, we overrule her first issue. 

IV. Conclusion


 Having overruled both of Rosita's issues on appeal, we affirm the judgment of the
trial court.

 



 ________________________

 DORI CONTRERAS GARZA,

 Justice

 





Memorandum Opinion delivered and 

filed this the 7th day of May, 2009.

1. Adan did not appear at this hearing.
2. Rosita and Adan's marriage license was issued on September 6, 1994, and was filed in the Nueces
County public records on September 12, 1994.
3. Attached to Rosita's motion for new trial, among other things, was a birth certificate for the couple's
only child. The birth certificate indicates that the child was born on January 4, 1990, and that she was born
to "Mr. and Mrs. Adan De La Paz." Rosita argued that this denotation on the birth certificate is sufficient to
establish that the couple held themselves out to be married prior to their ceremonial marriage on September
10, 1994.
4. Adan testified that at the time of the final hearing, he worked for Garcia's Holiday Tours as a
mechanic. A copy of Adan's pay stub from Garcia's Holiday Tours for the week of April 4, 2006 to April 10,
2006, reflects that Adan made $416.59.
5. In her motion for new trial, Rosita does not complain about the trial court's division of 1541 16th
Street. Furthermore, on appeal, Rosita's arguments center on the trial court's treatment or lack thereof of
1533 and 1537 16th Street; she fails to explain how the trial court abused its discretion in ordering the sale
of 1541 16th Street. See Tex. R. App. P. 38.1(h).
6. A suit for partition of former community property is the proper means of dividing property between
tenants in common. Harrell v. Harrell, 692 S.W.2d 876, 876 (Tex. 1985) (per curiam).